## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 07 2018, 8:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of M.N. (Child) and S.N. (Mother);

S.N. (Mother),
*Appellant-Defendant,*

v.

The Indiana Department of Child Services,

*Appellee-Plaintiff*

June 7, 2018

Court of Appeals Case No. 18A-JT-405

Appeal from the Huntington Circuit Court

The Honorable Thomas M. Hakes, Judge

Trial Court Cause No. 35C01-1705-JT-7

**May, Judge.**

[1] S.N. ("Mother") appeals the involuntary termination of her parental rights to M.N. ("Child"). Mother argues the Department of Child Services ("DCS") did not present sufficient evidence the conditions under which Child was removed from Mother's care would not be remedied; Mother posed a threat to Child's well-being; termination was in Child's best interests; and there existed a satisfactory plan for Child after termination. We affirm.

# Facts and Procedural History[1]

[2] Mother and J.N. ("Father")[2] (collectively, "Parents") are the biological parents of Child, who was born on April 15, 2015. On May 6, 2015, DCS investigated a report that Mother used heroin until the eighth month of her pregnancy, had used heroin since Child's birth, and had given Child heroin "in order to make him go to sleep." (App. Vol. II at 37.) Parents submitted to oral drug screens, and on May 11, the drug screens came back positive for heroin use.

[3] On May 12, 2015, DCS filed a petition alleging Child was a Child in Need of Services ("CHINS"); the trial court held a detention and initial hearing on the

---

[1] Mother's statement of the facts indicates only, "The salient facts of the present matter are found in **STATEMENT OF CASE-II COURSE OF PROCEEDINGS**." (Br. of Appellant at 11) (emphasis and formatting in original). This statement does not comport with the Indiana Rule of Appellate Procedure. *See* Ind. App. R. 46(A)(6) ("*Statement of Facts*. This statement shall describe the facts relevant to the issues presented for review but need not repeat what is in the statement of the case.")

[2] Father's parental rights were also terminated but he does not participate in this appeal.

CHINS petition; and Parents denied Child was a CHINS, despite the fact Parents "admitted in the hearing that they would test positive for drugs if screened at the detention hearing." (*Id*.) DCS removed Child from Parents' care on May 12 and placed him with a paternal step-cousin, L.S. Regarding visitation, the court ordered:

> Parent[s] shall not have any contact or visitation with the [C]hild until the levels of heroin in their systems test lower than they did at the time they were screened on May 7, 2015, at which point, the parents may immediately have supervised visitation with the [C]hild. If at any point, the parents' heroin levels test higher tha[n] the immediately preceding drug screen results, supervised visitation with the [C]hild shall be immediately suspended without further court order.

(*Id.* at 38.)

[4] Mother passed a drug test so that she could visit with Child. In the time before the next trial court hearing on May 28, Mother had four opportunities to visit with Child. Mother attended the first visit with no incident, but she slept through the next visit and was late to the two final visits. The trial court then suspended Mother's visitation because her drug screen violated the terms of its May 12 order regarding visitation. At the May 28 hearing, Parents admitted they did not have a permanent address. DCS scheduled Mother for substance abuse assessments twice in June 2015, but she did not complete them.

[5] On June 8, 2015, DCS filed an amended petition alleging Child was a CHINS. On June 16, the trial court held an initial hearing on the amended petition and

ordered visits between Parents and Child remain suspended due to Parents' drug use. On July 29, 2015, police arrested Mother, and the State charged Mother with Level 5 felony dealing in cocaine or a narcotic drug[3] and Level 5 felony neglect of a dependent resulting in bodily injury[4] for Mother's actions against Child, including giving Child heroin. At the same time, police also arrested Father on other charges.

[6] On August 19, and September 30, 2015, the trial court continued its fact-finding hearing on DCS's CHINS petition to a later date due to Parents' incarceration. Mother pled guilty to the charges against her and was sentenced on October 13, 2015. As part of Mother's sentence, the trial court entered a no-contact order between Mother and Child based on the neglect conviction. The no-contact order extends through Mother's four years of probation following her release from incarceration. Mother's earliest release date is October 13, 2019.

[7] On December 23, 2015, DCS again amended the CHINS petition. On March 24, 2016, Parents admitted Child was a CHINS, and the trial court adjudicated him as such. On April 21, 2016, the trial court entered dispositional and parental participation orders, which ordered Mother to participate in certain services. However, because of her incarceration, the trial court ordered Mother, upon her release from incarceration, to contact DCS and "finalize the

---

[3] Ind. Code § 35-48-4-1(a) (2014).

[4] Ind. Code § 35-46-1-4(b)(1)(A) (2014).

timeframe in which the herein-ordered services shall be completed." (*Id*. at 117.)

[8]     In May 2016, Child's placement changed to a different paternal step-cousin, S.O., and Child has remained in S.O.'s care for the pendency of the proceedings. On November 4, 2016, the trial court held a status hearing and noted Parents were not in compliance with the parental participation plan due to their incarceration. On May 4, 2017, the trial court held a permanency hearing and changed the plan for Child from reunification to adoption. On May 31, 2017, DCS filed a petition to terminate Parents' parental rights to Child.

[9]     On November 2, 2017, the trial court held a status hearing, and set a permanency hearing for May 3, 2018. On December 5, 2017, the Guardian ad Litem ("GAL") filed her report recommending termination of parental rights. On December 14, 2017, the trial court held an evidentiary hearing on DCS's petition for termination of parental rights and, on December 28, 2017, entered its order terminating Parents' rights to Child.

# Discussion and Decision

[10]    We review termination of parental rights with great deference. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences

most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[11] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[12] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[13] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.[5]

---

[5] Mother does not challenge the trial court's findings, and thus we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

[14] Mother challenges the trial court's conclusions that the conditions under which Child was removed were not likely to be remedied and continuation of the parent-child relationship posed a threat to Child's well-being. Mother also argues termination is not in Child's best interests and there was not a satisfactory plan for Child after termination.

### *Child's Well-Being*

[15] Termination of parental rights is proper where the child's emotional and physical development is threatened. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. The court need not wait until the child is harmed irreversibly such that his physical, mental, and social development is permanently impaired. *Id*. To support its finding that continuation of the parent-child relationship posed a threat to the well-being of Child, the trial court found Mother gave Child heroin during Child's infancy to help Child sleep; Mother had not seen Child since Child was three weeks old; and there is currently a no-contact order between Mother and Child due to Mother's conviction of neglect of a dependent.

[16] In addition, regarding Child's developmental challenges due to his exposure to heroin before and after birth, the trial court found:

> 29 f. For the first two and a half to three months that [Child] lived with [L.S.], [Child] experienced withdrawal symptoms.

* * * * *

29 r. [Child] requires a set schedule and consistent ritual in order to function properly and to be able to sleep at night.

* * * * *

30 e. [Child] is a special needs child and [GAL] is concerned about [Parents'] abilities to care for themselves let alone [Child].

30 f. [Child] has been in placement far too long and waiting an additional five to six months for Father to be released and possibly begin building a relationship with [Child], let alone waiting for Mother to be released, would be detrimental to [Child].

* * * * *

32 c. [Child] faces struggles that require constant vigilance including everything going in his mouth, his getting overstimulated easily, his need for ritual and routine, and his physical limitations[,] which include:

    i. Eczema
    ii. Circulation problems with his lower legs
    iii. Diaper rash
    iv. Constant sniffles
    v. Burning diarrhea in that if he has diarrhea and the diaper is not changed immediately his skin will blister and bleed.

* * * * *

32 j. [S.O.] testified that she believed Mother and Father could learn to care for [Child], but it would be detrimental for [Child]

to wait that long for [Parents] to be released from prison and for [Child] to be removed from his home.

(App. Vol. II at 42-4.)

[17] Mother argues:

> [G]iven the improvement she made while incarcerated;[6] that afforded enough time after release to implement services; that with her release from incarceration being less than two years away; that she wanted to and planned to implement DCS services upon her release; that she had an employment and housing plan, that . . . the continuation of her relationship with Child would not be harmful to Child's well-being.

(Br. of Appellant at 23) (errors in original) (footnote added). We are unpersuaded by Mother's arguments, which are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court will not reweigh evidence or judge the credibility of witnesses).

[18] Based on Mother's treatment of Child prior to DCS's involvement and the challenges Child has faced and will continue to face because of Mother's actions, we conclude the trial court's findings support its conclusion that continuation of the parent-child relationship poses a threat to the well-being of

---

[6] Mother presented evidence she completed substance abuse treatment and maintained her sobriety while incarcerated.

Child.[7] *See In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001) (affirming termination of parental rights based on findings that support the trial court's conclusion that continuation of parent-child relationship posed a threat to well-being of child), *trans. denied*.

### Best Interests

[19] In determining what is in Child's best interests, a juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Child's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[20] Regarding Child's best interests, the trial court found Child was bonded with his current caregiver; Child viewed his relative placement as his family; Child

---

[7] Indiana Code section 31-35-2-4(B)(2)(B) is written in the disjunctive, and we need only decide if the trial court's conclusion supports one of these requirements. *See In re L. S.*, 717 N.E.2d at 209 (because statute written in disjunctive, court needs to find only one requirement to terminate parental rights). Because trial court's findings supported its conclusion continuation posed a threat to the well-being of Child, we need not review whether the findings also supported its conclusion that the conditions under which Child was removed from Mother's care would not be remedied.

has been in placement since he was three weeks old; Child has multiple physical and mental difficulties due to being given heroin by Mother when Child was an infant; and "[w]hile Mother and Father may have the ability to learn how to care for [Child], prolonging the wait for permanency and giving [Parents] a second chance would not be in [Child's] best interest and would hurt [Child]." (App. Vol. II at 42.) Mother argues it is Child's best interests that Mother "be afforded the ability to implement services with DCS and given time to demonstrate that he [sic] can be a parent to Child and that [sic] in a timely manner, be reunified with Child." (Br. of Appellant at 24.)

[21] We cannot agree. Mother has not seen Child since Child was three weeks old, Mother cannot see Child due to a no-contact order stemming from her conviction for neglect of Child, and Mother's actions caused Child's current and future physical and mental challenges.[8] Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court will not reweigh evidence or judge the credibility of witnesses). Therefore, we conclude the trial court's findings support its conclusion that termination is in Child's best

---

[8] Mother argues her case is factually similar to *In re K.E.*, in which our Indiana Supreme Court reversed the termination of Father's parental rights because, despite his incarceration, Father "made extensive efforts to better himself by learning parenting skills, addressing his problems with substance abuse, and establishing a bond with both of his children." *In re K.E.*, 39 N.E.3d 641, 643-4 (Ind. 2015). The only similarities between *In re K.E.* and Mother's case is that both appellants were incarcerated and completed substance abuse treatment. In this case, Mother had not established a bond with Child due in part to the no-contact order in place to protect Child from Mother's neglectful actions. Further, Mother has presented no evidence she attempted to engage in classes to assist her with parenting skills while incarcerated. Finally, the Father *in In re K.E.* had not inflicted the level of harm Mother inflicted on Child in this case. *In re K.E.* is inapposite.

interests. *See McBride v. Monroe Cty. Office of Family & Children*, 798 NE.2d 185, 203 (Ind. Ct. App. 2003) (holding findings regarding child's need for permanency and bond to foster family sufficient to support conclusion that termination was in best interests of child).

### *Satisfactory Plan for Care and Treatment*

[22] Pursuant to Indiana Code section 31-35-2-4(b)(2)(D), parental rights cannot be terminated unless DCS provides sufficient evidence of a satisfactory plan for the care and treatment of the children following termination. We have held "[t]his plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.,* 804 N.E.2d at 268.

[23] The trial court found S.O. was willing to adopt Child and, based thereon, concluded there existed a satisfactory plan for Child's care following termination, "that being adoption." (App. Vol. II at 45.) Mother acknowledges there is no case law to support her argument that adoption is not a satisfactory plan for Child's care, but still insists she should be given an opportunity to prove she can be a good parent after she is released from incarceration. We cannot agree. Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court will not reweigh evidence or judge the credibility of witnesses). Adoption was a satisfactory plan for Child's care following the termination of Mother's parental rights. *See In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008) (adoption is satisfactory post-termination plan).

# Conclusion

The trial court's findings supported its conclusions that the continuation of the parent-child relationship posed a threat to Child; that termination was in Child's best interests; and that there existed a satisfactory plan for Child's care following the termination of Mother's parental rights. Accordingly, we affirm.

Affirmed.

Riley, J., and Mathias, J., concur.